Arwen R. Johnson (SBN 247583)
arwen.johnson@kslaw.com
James A. Unger (SBN 325115)
junger@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Stephen E. Baskin, *pro hac vice (to be filed)*
sbaskin@kslaw.com
Patrick Lafferty, *pro hac vice (to be filed)*
plafferty@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Ave NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Plaintiff*
*SmartSuite Holdings, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMARTSUITE HOLDINGS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CODEBLOX, LLC, <br><br> Defendant. | Case No. 8:25-cv-1889 <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT OF U.S. PATENT NOS. 11,269,889 AND 11,829,370** <br><br> **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

SUMMARY OF ACTION .................................................................................................. 3

PARTIES ............................................................................................................................ 3

JURISDICTION AND VENUE ........................................................................................ 3

STATEMENT OF FACTS ................................................................................................ 5

COUNT 1 NON-INFRINGEMENT OF U.S. PATENT NO. 11,829,370 ........................ 7

COUNT 2 NON-INFRINGEMENT OF U.S. PATENT NO. 11,269,889 ........................ 9

PRAYER FOR RELIEF .................................................................................................. 12

JURY TRIAL DEMAND ................................................................................................ 13

KING & SPALDING LLP
ATTORNEYS AT LAW

Plaintiff SmartSuite Holdings, Inc. (hereinafter, "SmartSuite"), for its Complaint against Defendant CodeBlox, LLC (hereinafter, "CodeBlox") alleges and states as follows:

## SUMMARY OF ACTION

1. This action arises under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

2. In this action, SmartSuite seeks a declaration that it does not infringe any claim of U.S. Patent Nos. 11,269,889 ("the '889 Patent") and 11,829,370 ("the '370 Patent") (collectively, the "Patents-in-Suit"). Exhibits D ('889 Patent) and E ('370 Patent).

## PARTIES

3. SmartSuite is a company organized under the laws of the state of Delaware and maintains its principal place of business at 200 Spectrum Center Dr., Suite 300, Irvine, CA 92618.

4. On information and belief, CodeBlox is a company organized under the laws of Florida having its principal place of business at 900 Circle 75 Parkway SE, Suite 1245, Atlanta Georgia 30339.

## JURISDICTION AND VENUE

5. This action for declaratory judgment arises under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6. This Court has subject matter jurisdiction over the claims alleged in this action under 28 U.S.C. §§ 1331, 1332, 1338, 2201, and 2202 because this Court has exclusive jurisdiction over declaratory judgment claims arising under the patent laws of the United States pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

7. This Court can provide the declaratory relief sought in this Declaratory Judgment Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201. An actual case and controversy exists because CodeBlox sent a demand letter into this district threatening SmartSuite with allegations of infringement of the Patents-in-Suit and demanding that SmartSuite "immediately discontinue all of your infringing services on the SmartSuite work management platform" (the "Accused Product"). Exhibit A (January 30, 2025 correspondence).

8. On June 20, 2025, CodeBlox sent another demand letter into this district alleging

1  infringement of the Patents-in-Suit and attaching a draft complaint that named SmartSuite as an
2  alleged infringer. Exhibit A (Complaint). CodeBlox further stated that "DEMAND is hereby made
3  that you immediately discontinue your infringing services on the SmartSuite work management
4  platform, and provide us a written confirmation of your compliance with this demand within
5  fourteen (14) days of receipt for this letter." Exhibit A (June 20, 2025 correspondence).

6        9.     On August 7, 2025, counsel for SmartSuite informed CodeBlox that they were
7  reviewing the allegations. On August 19, 2025, CodeBlox sent an email stating that they "intend to
8  file [the complaint] early next week, unless we can resolve it prior to Monday [August 25, 2029]."
9  Exhibit B.

10        10.    On August 22, 2025, counsel for SmartSuite sent CodeBlox a letter demonstrating
11  that SmartSuite does not infringe the Patents-in-Suit. Exhibit C. The letter further informed
12  CodeBlox that there was no basis to assert infringement of the Patents-in-Suit and that it appeared
13  that CodeBlox had failed to conduct reasonable due diligence before making the infringement
14  allegations against SmartSuite. *Id*. SmartSuite further requested "that CodeBlox withdraw its
15  infringement assertions immediately." *Id*. As of the filing of this Complaint, CodeBlox has not
16  withdrawn its infringement assertions.

17        11.    This Court has personal jurisdiction over CodeBlox because CodeBlox has engaged
18  in actions in this District that form the basis of SmartSuite's claims against CodeBlox and that have
19  created a real, live, immediate, and justiciable case or controversy between CodeBlox and
20  SmartSuite. This includes the correspondences attached as Exhibits A and B alleging infringement
21  of the patents-in-suit and threatening to file suit imminently.

22        12.    As a result of CodeBlox's actions described above and herein, CodeBlox has
23  established sufficient minimum contacts with this District such that CodeBlox is subject to specific
24  personal jurisdiction in the Central District of California for this action. Further, the exercise of
25  personal jurisdiction based on ongoing, and highly pertinent contacts does not offend traditional
26  notions of fair play and substantial justice.

27        13.    An actual and justiciable controversy exists between SmartSuite and CodeBlox with
28  respect to whether SmartSuite infringes any claim of the Patents-in-Suit, requiring a declaration by

1  the Court. SmartSuite contends that none of SmartSuite's products, including the Accused Product,
2  infringes any claim of the Patents-in-Suit. On information and belief, CodeBlox's position is that
3  SmartSuite's Accused Product infringes one or more claims of each of the Patents-in-Suit.

4  14.  The controversy is immediate and substantial because, as discussed herein,
5  CodeBlox threatened SmartSuite with allegations of infringement and seeks that SmartSuite
6  immediately "discontinue" its services corresponding to the SmartSuite Accused Product.
7  CodeBlox also threatened to file a complaint alleging infringement of the Patents-in-Suit. Exhibits
8  A, B.

9  15.  Venue is proper under this district under 28 U.S.C. §§ 1391 and 1400, including
10 because, under Ninth and Federal Circuit law, venue in declaratory judgment actions for
11 noninfringement of patents is determined under the general venue statute, 28 U.S.C. § 1391.

12 16.  Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where a
13 defendant resides. An entity with the capacity to sue and be sued, such as CodeBlox, is deemed to
14 reside, if a defendant, in any judicial district in which such defendant is subject to the court's
15 personal jurisdiction with respect to the civil action in question under 28 U.S.C. § 1391(c).

16 17.  As discussed above, CodeBlox is subject to personal jurisdiction with respect to this
17 action in the Central District of California, and thus, for the purposes of this action, CodeBlox
18 resides in the Central District of California and venue is proper under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

20 18.  In 2000, SmartSuite's CEO Jon Darbyshire founded Archer Technologies, an
21 enterprise governance, risk and compliance software, giving business users—not developers—the
22 ability to adapt software to their unique business requirements. Jon and the Archer team built a
23 flexible, award winning platform and solution suite that became the mainstay of governance, risk
24 and compliance teams for some of the world's most powerful organizations, including 1 in 3 of the
25 Fortune 100. Archer Technologies was purchased by EMC Corporation in 2010.

26 19.  SmartSuite was founded by Mr. Darbyshire and team in 2021 to provide a work
27 management platform that manages any process, from any industry, on one platform. Now,
28 SmartSuite unites essential elements used to get work done, regardless of company size or type.

20. SmartSuite's work-management platform (the "SmartSuite Platform") is delivered as software-as-a-service ("SaaS") through internet browsers and mobile applications and is made available to customers on a subscription basis. The SmartSuite Platform provides an intuitive, configurable user interface through which subscribers may create and adjust custom views, templates, and dashboards to visualize information relevant to their particular business needs.



21. By letter dated January 30, 2025, counsel for CodeBlox alleged that the SmartSuite Platform infringes at least claim 1 of the '370 Patent and demanded that SmartSuite "immediately discontinue" making the platform available. Exhibit A. A subsequent letter dated June 20, 2025, repeated those accusations and enclosed a draft complaint for patent infringement of the '370 and '889 patents. *Id*. CodeBlox threatened to bring suit unless SmartSuite capitulated to CodeBlox's demands within fourteen days.

22. The CodeBlox letters contained a conclusory claim chart that relied on public-facing marketing descriptions from SmartSuite's website. The letters did not identify any SmartSuite source code, architectural diagrams, or technical specifications supporting CodeBlox's infringement assertions. SmartSuite disputes the accuracy, completeness, and legal sufficiency of CodeBlox's charts and denies that the SmartSuite Platform practices any claim of the Patents-in-Suit, either literally or under the doctrine of equivalents.

23. On August 22, 2025, counsel for SmartSuite sent CodeBlox a letter demonstrating that SmartSuite does not infringe the Patents-in-Suit. Exhibit C. That letter identified specific limitations for which CodeBlox has failed to show any basis for its allegations that SmartSuite's

products practice the claims. SmartSuite further requested "that CodeBlox withdraw its infringement assertions immediately." *Id*. As of the filing of this Complaint, CodeBlox has not withdrawn its infringement assertions.

## COUNT 1

## NON-INFRINGEMENT OF U.S. PATENT NO. 11,829,370

24. SmartSuite hereby repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated herein.

25. CodeBlox's January 30, 2025 letter alleged that the Accused Product infringes "at least on Claim 1 of the 11,829,370 patent." Exhibit A (January 30, 2025 correspondence). Claim 1 is reproduced below:

> 1. A system for executing an application development environment, the system comprising:
>
> a metadata database storing a plurality of application data elements in a data serialization format and a plurality of metadata structures, wherein each application data element comprises a plurality of data fields that each represent an individual value, wherein each data field has a label, a data type, and one or more attributes and each metadata structure comprises one or more application data elements, rules, workflows and reports;
>
> a user database storing user data, wherein the user data comprising a plurality of user-defined values;
>
> a processor;
>
> a memory storing instructions that when executed cause the processor to perform operations comprising:
>
> providing a web service for receiving an updated value for a data element, wherein a type of the data element corresponds with one of the application data elements of the plurality of application data elements or one of the user-defined values of the plurality of user-defined values, retrieving a particular one of the application data elements from the metadata database based on the data element corresponding to a first data field of the plurality of data fields wherein each application data element defines a static structure of fields where each field represents an individual value that may change over time, and parsing the particular one of the application data elements for determining the type of the data element and updating a value of the first data field

with the updated value for the data element;

storing, by the web service, the data element in either the metadata database or the user database based on the type of the data element determined;

automatically generating, by the web service, an update statement and updating the data element with the updated value; and

wherein the web service allows for execution of the software code without using any software deployment processing comprising compilation, linking, installation, and configuration processes.

*See* Exhibit E.

26. As described in further detail below, SmartSuite has not infringed, does not infringe, and will not infringe independent claim 1 or any other claim of the '370 Patent, either directly or indirectly, literally, or under the doctrine of equivalents, including by making, using, importing, offering for sale, or selling the Accused Product.

27. As just one of many examples (*see, e.g.*, Exhibit C), claim 1 expressly requires **both** (1) "a metadata database" that stores "application data elements" *and* "metadata structures," and (2) "a user database storing user data" comprising "user-defined values." CodeBlox identified no such dual-database architecture in SmartSuite. The claim chart it provided instead copies a sentence from SmartSuite's help center describing a "Solution" and "Tables" for the claimed "metadata database," and then appears to cite to the *same* "Tables" for the user database. Nothing in those quotations—even if taken at face value—suggests distinct databases, much less shows how one database stores serialized application data elements and metadata structures while a separate database stores user-defined values, as recited in the claims. Similarly, CodeBlox never identified where SmartSuite uses either "application data elements," "metadata structures," or "user defined values" at all, or what it contends meets those limitations. Each of the other claims has similar limitations that are not met for similar reasons.

28. For at least the above reasons, SmartSuite has not infringed and does not infringe any independent or dependent claims of the '370 Patent directly or indirectly, literally, or under the

doctrine of equivalents.

29. As set forth above, an actual controversy exists between SmartSuite and CodeBlox with respect to the alleged infringement of the '370 Patent, and this controversy is ongoing and likely to continue.

30. A judicial declaration is necessary and appropriate so that SmartSuite may ascertain its rights regarding the '370 Patent.

31. Accordingly, SmartSuite seeks a judgment declaring that any manufacture, making, use, sale, offer for sale, or importation of the Accused Product has not infringed, does not infringe, and will not infringe, directly or indirectly, contributorily, or by inducement, any claim of the '370 Patent.

## COUNT 2

## NON-INFRINGEMENT OF U.S. PATENT NO. 11,269,889

32. SmartSuite hereby repeats, realleges, and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated herein.

33. Although CodeBlox alleges that SmartSuite's products and services are "within the scope of" the '889 patent (Exhibit A, June 20 correspondence), and has provided SmartSuite with a draft complaint alleging such infringement (*See* Exhibit A, Complaint at Count I), CodeBlox has not identified which claims it alleges SmartSuite practices. Nevertheless, SmartSuite does not infringe any of the claims.

34. Claim 1, the only independent claim, is reproduced below:

> 1. A system providing a graphical user interface-based application development environment, comprising:
>
> one or more processors;
>
> a memory coupled with the one or more processors having instructions stored therein;
>
> a metadata database configured to store an application data element in a data serialization format, wherein the application data element comprises a plurality of data fields that each represent an individual value, wherein each data field has a label, a data type, and one or more attributes;

a web service configured to receive an updated value for a data element, wherein the web service is further configured to retrieve the application data element from the metadata database based on the data element corresponding to a first data field of the plurality of data fields, and wherein the web service is further configured to parse the application data element to update a value of the first data field with the updated value of the data element;

a relational database of user data configured to store the data element in a table, wherein the web service is configured to automatically generate an update statement to update the data element in the table with the updated value; and

wherein metadata is stored in a dedicated repository with user specified attributes to dynamically arrange software code to manage data and perform enterprise application functions in a fully automated fashion;

wherein metadata allows users to describe structure of data elements, relationships between data elements, and rich behavior that drives data manipulation and interacts with a digital environment through a variety of interfaces;

wherein a set of backend processing elements convert metadata in real-time into user-defined behavior;

wherein the system is configured to integrate with third-party systems and/or hosted environments; and

wherein an intelligent data flow includes the following steps:

a user requests data to be retrieved via HTTP REST API, the API abstracting complexity of underlying data structures and relationships,

a platform web service dynamically generates SQL queries based on data elements requested and additional search criteria, and the platform web service submits SQL queries to a database server and sends results back to the user,

the user updates retrieved data,

the user submits data to be updated via HTTP RESTful API,

a web service retrieves metadata structures relevant to the data being updated from a NoSQL storage location,

expressions defined in the metadata are used to dynamically generate C # code elements,

dynamically generated C # code elements are used to automatically calculate derived data values to supplement data submitted by the user,

dynamically generated C # code elements are used to automatically validate data submitted by the user,

an SQL update statement is dynamically generated based on metadata content, and the SQL updated statement is submitted and processed on h database server,

an event with updated values is generated and submitted to a scalable, distributed event bus,

the event bus distributes the event to one of many event processing engines running on a cluster of dedicated virtual machines using a standard load balancing algorithm,

an event processing engine retrieves metadata structures specifying rules/behavior to be triggered by a specific type of event,

the event processing engine dynamically generates C # code elements,

the C # code elements apply conditions and translations to the event producing new data elements,

the C # code elements retrieves additional data from a database using dynamically generated SQL code,

the C # code elements performs database updates using dynamically generated SQL code, and

the C # code elements communicates with external systems and submits dynamically generated requests.

*See* Exhibit D.

/ / /

/ / /

/ / /

35. The '889 patent includes many of the same or similar limitations discussed above for the '370 patent for which CodeBlox has no evidence that SmartSuite practices, including *inter alia* (1) a dual database structure (metadata database and a relational database of user data); (2) "data serialization format" requirements; and (3) use of "metadata structures." It also requires additional elements for which CodeBlox has not alleged are practiced at all, including "dynamically generate[ing] C # code elements" (and related limitations); "dynamically generated SQL code" (and related limitations); the specific use of a "NoSQL storage location" and "RESTful API"; and that the "C # code elements communicates with external systems," among other elements for which CodeBlox has not addressed. *See* Exhibit C.

36. For at least the above reasons, SmartSuite has not infringed and does not infringe any independent or dependent claims of the '889 Patent directly or indirectly, literally, or under the doctrine of equivalents.

37. As set forth above, an actual controversy exists between SmartSuite and CodeBlox with respect to the alleged infringement of the '889 Patent, and this controversy is ongoing and likely to continue.

38. A judicial declaration is necessary and appropriate so that SmartSuite may ascertain its rights regarding the '889 Patent.

39. Accordingly, SmartSuite seeks a judgment declaring that any manufacture, making, use, sale, offer for sale, or importation of the Accused Product has not infringed, does not infringe, and will not infringe, directly or indirectly, contributorily, or by inducement, any claim of the '889 Patent

**PRAYER FOR RELIEF**

WHEREFORE, SmartSuite respectfully requests:

A. The entry of judgment in favor of SmartSuite and against CodeBlox on each and every count of the Complaint;

B. An order declaring that the Accused Product has not infringed, does not infringe, and will not infringe any claim of the Patents-in-Suit;

D. An order awarding SmartSuite its costs of suit; and,

E. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, SmartSuite hereby respectfully demands a trial by jury of all issues triable to a jury.

Dated: August 25, 2025

**KING & SPALDING LLP**

By: */s/ Arwen Johnson*
Arwen Johnson
arwen.johnson@kslaw.com
James A. Unger
junger@kslaw.com
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Stephen E. Baskin, *pro hac vice (to be filed)*
sbaskin@kslaw.com
Patrick Lafferty, *pro hac vice (to be filed)*
plafferty@kslaw.com
1700 Pennsylvania Ave NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Plaintiff*
*SmartSuite Holdings, Inc.*